Richard VESTAL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 11A04–0003–CR–121.

Court of Appeals of Indiana.

March 7, 2001.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Richard Vestal appeals his conviction for burglary as a class C felony and theft as a class D felony. He also appeals the trial court's order to pay $1,250.00 in reimbursement for the Clay County Public Defender Fund and $1,472.35 to Clay County for his extradition from Louisiana. Because we find that double jeopardy does not apply, we affirm Vestal's convictions. However, we reverse and remand on the payment of reimbursement costs with instructions to hold an indigency hearing.

### Facts and Procedural History

The record reveals that on January 25, 1997, Vestal and his son, Wade Phillips were drinking when Vestal asked Phillips if he wanted to make some money. Phillips answered affirmatively, and the two drove to Brazil, Indiana. Vestal pulled the truck over near The Bottle Shop in Brazil, and after failing in his attempt to break a window, pried the door open with a crowbar. Both Vestal and Phillips entered the shop and took cases of beer, whiskey, cartons of cigarettes, miniature bottles of vodka and just under $100 in cash. The men then returned to Vestal's home in Terre Haute to store the items and divide them up. Eventually, the police found the missing items in various locations where Vestal had been living or staying.

Vestal was arrested but released from custody after he paid a ten percent cash bond. He failed to appear for his trial on July 27, 1997, and was consequently tried *in absentia.* Vestal was eventually arrested in Louisiana, waived extradition and was returned to Clay County for sentencing. The court sentenced Vestal to the maximum sentence of eight years for the burglary and three years for the theft to be served consecutively, but reduced the sentence to a total of ten years—the maximum consecutive sentence allowable for a single episode of criminal conduct. The trial court also ordered Vestal to pay $496.68 in restitution to Rick James, the owner of the The Bottle Shop store, $1,250.00 in reimbursement to the Clay County Public Defender Fund, and $1,472.35 to Clay County for his extradition from Louisiana. This appeal then ensued.

### Discussion and Decision

#### I. Double Jeopardy

■ Vestal argues that convicting him of both burglary and theft violates the Double Jeopardy provision found in Art. I, § 14 of the Indiana Constitution. Specifically, Vestal contends that the jury used the same evidence to convict him on both crimes. Our supreme court has recently visited the double jeopardy issue and held that:

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999).

In order to convict Vestal of burglary, the State must prove that he broke into and entered a building, with the intent to commit a felony therein. Ind.Code § 35–43–2–1. To convict Vestal of theft, the State must prove that he knowingly or intentionally exerted unauthorized control over the property of another, with intent to deprive that person of any part of its value or use. Ind.Code § 35–43–4–2(a). To obtain a conviction for burglary, it is not necessary for the State to prove that the defendant committed theft since burglary is complete upon the breaking and entering with the intent to commit the theft; likewise, a conviction for theft does not require a breaking and entering. Therefore, each of the offenses contain at least one element which is separate and distinct from the other offense. *Joy v. State,* 460 N.E.2d 551, 563 (Ind.Ct.App. 1984); *see also Moffatt v. State,* 542 N.E.2d 971, 975 (Ind.1989).

■ Accordingly, we find that these convictions do not violate the statutory elements test of the double jeopardy clause. However, this does not end our inquiry. A violation may still have occurred if there is a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Richardson,* 717 N.E.2d at 53 (Ind.1999).

Ordinarily, we would now move on to the "actual evidence" test from *Richardson.* Upon a literal application of the "actual evidence" test, we would find that the evidence of the intent to commit the theft required for the burglary is the same evidence required to prove the theft. Therefore, the evidence used by the fact-finder to establish the elements of the burglary would be the same used to establish the elements of the theft. Thus, a strict appli-

cation of *Richardson* would result in a finding of double jeopardy under the "actual evidence" test.

■ But, our supreme court could not have intended such a result. In *Richardson,* the supreme court stated: "we conclude that Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson,* 717 N.E.2d at 49. The supreme court further added: "[a] criminal transgression was a person's conduct that violated a statutorily defined crime." *Id.* When the supreme court uses the term "same evidence" or "actual evidence," we believe it actually meant evidence of the same act. That is to say, a double jeopardy violation would occur if the act used to convict a person for two different criminal transgressions were the same.

Here, we have two distinct acts: burglary, accomplished by Vestal breaking into and entering a building with the intent to commit a felony and, theft, accomplished by Vestal taking unauthorized possession of property with the intent to deprive the owner of its use. Therefore, even though the theft is used to prove the intent of the burglary, because it is a distinct act from the burglary itself, there is not a double jeopardy violation. The very purpose of double jeopardy is to avoid convicting a person twice for the same act. Because we have two distinct acts, there is no double jeopardy violation.

To hold otherwise would lead to absurd results. First, an offender would not be punished for two separate criminal acts. For example, suppose burglar one commits a burglary and then, once inside, abandons his intent to commit a theft and burglar two commits a burglary and then, once inside, completes the theft. Both burglars, under a strict interpretation of the "actual evidence" test, would be subject to the same punishment even though burglar two completed the crime of theft and burglar one did not. The injustice would be exacerbated if the underlying crime to the burglary were rape, murder or other more serious crime.

Second, although the burglary and underlying crimes are two separate acts, we would decide whether double jeopardy exists based on the quantum of evidence on the underlying crime. If there were a sufficient quantity of evidence of the underlying crime to allocate some of the evidence to the burglary charge and some to the underlying crime, then double jeopardy would not exist. Suppose as an example that two burglars commit a burglary with the intent to commit a theft. If the only evidence of burglar one's intent were the theft itself, then the "actual evidence" test would preclude his conviction for both the crimes of burglary and theft. However, suppose that in addition to the evidence of the theft itself, burglar two told another person before the burglary that he intended to commit a theft while inside. With this additional evidence, burglar two could be convicted of both burglary and theft without violating the "actual evidence" test. These results could not have been the intention of our supreme court. Accordingly, we find that when the supreme court uses the term "same evidence" or "actual evidence," we believe, in this context, it means evidence of the same act.

## II. Reimbursement of Costs

The trial court also ordered Vestal to pay $1,250.00 to the Clay County Public Defender and $1,472.35 to Clay County for extradition expenses. Vestal argues that he should not have to pay these amounts. He contends that because Clay County was in no way injured by his burglary or theft, he cannot be made to pay restitution for his extradition. He further argues

that because the court held no indigency hearing to determine his ability to pay, he cannot be ordered to pay for his public defender. We address each argument in turn.

### A. Extradition Expenses

 Vestal argues that the trial court erred in ordering Vestal to pay Clay County for extradition costs. The trial court in sentencing Vestal stated that "[c]ourt orders defendant to make restitution to Rick James in the sum of $496.68, Clay County Extradition Expenses in the sum of $1,472.35. Court finds he should further reimburse Clay County Public Defender Fund in the amount of $1,250.00." Record at 245. Vestal relies on Ind.Code § 35–50–5–3 which provides that restitution may be ordered to the victim, the victim's estate, or the family of a victim who is deceased. He then argues that Clay County was not a victim of his crime and thus he cannot be ordered to pay restitution to the county. We would agree with Vestal if the order to pay Clay County for his extradition costs were indeed a restitution cost.

However, the trial court ordered Vestal to reimburse Clay County for his extradition, not pay restitution. Two police officers from Brazil, Indiana, were sent to Louisiana to escort Vestal back to Indiana. The cost of the trip for the two officers was $1,472.35. The State requested reimbursement for the costs and the court granted the order. Record at 81. Ind. Code § 35–33–14–1 states that a county extradition fund exists in each county. The purpose of this fund is to offset the costs of extraditing criminal defendants. Ind.Code § 35–33–14–2. Here, we presume the Clay County Extradition Fund was used to offset the costs of extraditing Vestal to Indiana. Thus, the order from the trial court to pay back money to this fund is considered a reimbursement of costs and not restitution.

### B. Indigency Hearing

 Vestal contends that the trial court judge did not conduct any indigency hearing before ordering him to pay $1,250.00 for his legal representation. Ind.Code § 33–19–2–3 states that when the court imposes costs it shall conduct a hearing to determine if the defendant is indigent. If the defendant is not indigent, then the court shall order the defendant to pay the costs.

 Initially, we note that the State concedes that we should remand on this issue with instructions to hold an indigency hearing. We agree. When the trial court appointed appellate counsel to represent Vestal, it impliedly found that he was indigent. However, a finding of indigency for appointing appellate counsel is not conclusive as to a defendant's ability to pay costs. *Everroad v. State*, 730 N.E.2d 222, 226 (Ind.Ct.App.2000). Therefore, because Vestal was ordered to pay costs without an indigency hearing, the proper remedy is to remand for such a hearing. *Id.* at 227. Thus, we remand for a hearing to address whether Vestal has the ability to pay the costs of his public defender and his extradition.

Affirmed in part and reversed and remanded with instructions to hold an indigency hearing.

NAJAM and KIRSCH, JJ., concur.