Luke PAYNE, Appellant–
Defendant/Cross–
Appellee,

v.

STATE of Indiana, Appellee–
Plaintiff/Cross–
Appellant.

No. 49A05–0202–CR–108.

Court of Appeals of Indiana.

Oct. 24, 2002.

A. Frank Gleaves, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant/cross-appellee Luke Payne ("Payne") appeals his convictions for two counts of Class B felony burglary of a dwelling.[1] Appellee-plaintiff/cross-appellant State of Indiana appeals the trial court's merger of Payne's convictions for theft and burglary. We affirm in part, reverse in part, and remand for resentencing.

---

1. Ind.Code § 35–43–2–1(1)(B)(i).

## Issues

Payne raises two issues for review, which we restate as follows:

I. whether the evidence introduced at trial was sufficient to convict Payne of two counts of burglary; and

II. whether the trial court properly denied Payne's motion for severance.

On cross-appeal, the State raises one additional issue for review, which we restate as follows:

III. whether the trial committed reversible error by merging Payne's two Class D felony theft convictions [2] with the two Class B felony burglary convictions.

## Facts and Procedural History

The facts most favorable to the convictions indicate that on the morning of May 18, 2001, Payne's parents, Thomas Payne ("Mr. Payne") and Stephanie Payne ("Mrs. Payne") (collectively, "the Paynes") went to work after having locked the doors and windows of their house. Around eight o'clock that same morning, Cathy Blankenship ("Blankenship"), a neighbor of the Paynes, observed Payne approaching the house. Payne did not live with his parents, nor did he have permission to be in the house without the permission and presence of either Mr. or Mrs. Payne. Shortly thereafter, Blankenship noticed a window screen separated from the window of the house. Blankenship phoned Mrs. Payne and alerted her of the situation.

Mrs. Payne rushed home and discovered Payne inside the house, lowering an opened window. Additionally, Mrs. Payne found her potted plants, formerly in front of the open window, scattered across the

floor. Mrs. Payne removed Payne from the house and took him to a park. That afternoon, Mr. Payne noticed two slits cut in the screen that corresponded to the locks of the opened window. Mr. Payne reported a portion of his coin collection missing. That evening, the Paynes phoned the police regarding this incident.

On May 30, 2001, Mrs. Payne discovered that a videocassette recorder ("VCR") was missing from the house; however, there were no signs of entry into the house. On May 31, 2001, Mr. Payne returned home to find that a second window screen was cut in a similar fashion as the screen in the incident on May 18, 2001. Additionally, the window was open, and the photo albums previously placed in front of the window were scattered across the floor. Mr. Payne found that a second VCR was missing from the house. On May 18, 30, and 31, 2001, the doors and windows of the Paynes' house were locked, and no one had permission to enter the house.

On June 1, 2001, Leva McCombs ("McCombs"), a friend of Payne, phoned Mr. Payne and said that she had found two pawn tickets in her car. McCombs explained that Payne had exclusive access to her car on the dates of the alleged burglaries. The pawn tickets, dated May 30 and May 31, 2001, described two VCRs matching the description and serial numbers of the VCRs stolen from the Paynes' house. The pawn tickets also contained Payne's signature, current address, state-issued identification number, and physical description. The pawn shop also retained a "police card" with Payne's thumbprint as required for police records. *See* Tr. at 94–95. On June 2, 2001, the Paynes met with Detective Stephen Fippen ("Detective Fippen") to discuss the burglaries.

2. Ind.Code § 35–43–4–2.

On June 7, 2001, the State charged Payne with three counts of burglary and three counts of theft.[3] On August 1, 2001, the State filed an information alleging Payne to be a habitual offender. Payne filed a motion to sever counts I and II from counts III, IV, V, and VI, which the trial court denied.[4] On January 10, 2002, a jury found Payne guilty on counts I, III, IV, V, and VI.[5] The jury found Payne not guilty on count II. Payne pled guilty to the habitual offender count. The trial court merged the theft conviction on count IV into the burglary conviction on count III and also merged the theft conviction on count VI into the burglary conviction on count V. The trial court entered concurrent sentences of fifteen years on the two burglary convictions and three years on the residential entry conviction, and added a ten-year consecutive sentence on the habitual offender conviction.

Both Payne and the State now appeal.

### Discussion and Decision

### I. Sufficiency of the Evidence

On appeal, Payne argues that there was insufficient evidence to convict him of the two counts of burglary. Specifically, he argues that the elements of breaking and entering were not established. We consider each conviction separately.

> It is well settled that in reviewing the sufficiency of the evidence, this Court does not reweigh the evidence or judge the credibility of witnesses. Looking at the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom, we will not disturb the verdict if there is substantial evidence of probative value to support each essential element of the offense.

*Baker v. State*, 273 Ind. 64, 66, 402 N.E.2d 951, 953 (1980). "If a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt, we will affirm the decision of the trial court." *Davis v. State*, 743 N.E.2d 751, 753 (Ind.2001).

The evidence must demonstrate that Payne did knowingly break and enter into the dwelling of another with intent to commit a felony therein (in this case, theft). *See* Ind.Code § 35–43–2–1 (defining burglary). "The element of breaking is satisfied by showing that even the slightest force was used to gain unauthorized entry." *Davis*, 743 N.E.2d at 753; *see also Gilliam v. State*, 509 N.E.2d 815, 817 (Ind.1987) (holding that evidence of a window screen removed from its proper place was sufficient to prove a breaking). Circumstantial evidence alone can prove the occurrence of a breaking. *Gilliam*, 509 N.E.2d at 817. Finally, "unexplained possession of recently stolen property will support a burglary conviction so long as there is evidence that there was in fact a burglary committed." *Allen v. State*, 743 N.E.2d 1222, 1230 (Ind.Ct.App.2001); *but see Kidd v. State*, 530 N.E.2d 287, 288 (Ind.1988) (holding that mere possession of stolen property one to three days after the burglary was insufficient, even with evidence of a breaking and entry).

In count III, the State charged Payne with burglary of the Paynes' home on May 30, 2001. Both Mr. and Mrs. Payne

---

**3.** Payne was charged with the following counts: count I, burglary (May 18); count II, theft (May 18); count III, burglary (May 30); count IV, theft (May 30); count V, burglary (May 31); count VI, theft (May 31).

**4.** The motion for severance does not appear in the record; therefore, our analysis will necessarily rely on pretrial argument and objections made during trial.

**5.** On count I, the jury found Payne guilty of residential entry as a lesser-included offense of burglary.

worked on that day, leaving the house empty; however, all the doors and windows were secured. *See* Tr. at 61. Mrs. Payne testified that on May 30, 2001, she noticed that a VCR was missing from her home; however, the record suggests no evidence of a forced entry. *See id.* at 40. Both Mr. Payne and Detective Fippen testified that there were no signs of forced entry on May 30, 2001. *See id.* at 61–62, 74, 77, 117.

■ The State's evidence on count III consisted solely of the pawn tickets establishing that Payne pawned a VCR owned by the Paynes on May 30, 2001. As previously mentioned, circumstantial evidence is sufficient to establish the breaking and entry elements of burglary. *See Gilliam,* 509 N.E.2d at 817. In the case at bar, although the evidence supports the inference that Payne possessed stolen property from his parents' house, it is insufficient to establish that he broke and entered the house. *Cf. Davis,* 743 N.E.2d at 754 (holding that evidence of an opened door, the presence of a person in the house for the purpose of guarding against burglaries, and the defendant's presence in the house was sufficient to sustain burglary conviction.); *Gilliam,* 509 N.E.2d at 817 (holding that evidence of removed window screen along with stolen property from within the house was sufficient to sustain burglary conviction.); *Willard v. State,* 272 Ind. 589, 603–04, 400 N.E.2d 151, 160 (1980) (holding that evidence of opened door exhibiting fresh pry marks and a ransacked bedroom was sufficient to sustain burglary.). Therefore, we must reverse Payne's conviction of burglary on count III.

■ As for count V, the record indicates that on May 31, 2001, Mr. Payne returned home from work to find a window screen cut, an open window, and photo albums scattered across the floor in front of the opened window. Upon further inspection, Mr. Payne determined that the VCR from his bedroom was missing. Mr. Payne testified that he saw the VCR in his bedroom on May 30, 2001, but that it was missing on the evening of May 31, 2001. *See* Tr. at 63–66. Also on May 31, 2001, Payne pawned the VCR stolen from Mr. and Mrs. Payne's bedroom. Given the evidence of a breaking and entry and Payne's possession of the recently stolen VCR, we conclude that the evidence is sufficient to support Payne's conviction on count V. *See Allen,* 743 N.E.2d at 1230.

## II.  Motion for Severance

■ Payne appeals the trial court's denial of his motion for severance. In his motion to sever, Payne contended that a jury might infer that he was guilty of the May 30 burglary based on the evidence from the remaining counts. Since we have reversed this burglary conviction, any error in the trial court's denial of Payne's motion to sever must be considered harmless.

## III.  Merger of Burglary and Theft

The State contends that the trial court erred in merging Payne's theft and burglary convictions. Since we have reversed Payne's burglary conviction on count III, the theft conviction on count IV stands without a sentence. We must therefore remand with instructions to enter a sentence on count IV.

■ We now determine whether the trial court erred in merging Payne's convictions on counts V and VI.[6] Indiana Code

---

6.  Payne contends that the State waived this issue by failing to object at sentencing. It is well settled, however, that errors in sentencing may be raised for the first time on appeal.

Section 35–50–1–1 states, "[t]he court *shall* fix the penalty of and sentence a person convicted of an offense." (Emphasis added.) We assume that the trial court did not sentence Payne on count VI, the theft conviction, because of perceived double jeopardy concerns. *See, e.g., Weemes v. State*, 637 N.E.2d 832, 835–36 (Ind.Ct.App. 1994) (holding that convictions for burglary and criminal recklessness should be merged for double jeopardy purposes). In the instant case, however, sentencing Payne for both burglary and theft would not violate Indiana's double jeopardy clause. *See* IND. CONST. art. I, § 14.

■ "To determine whether appellant was subjected to double jeopardy upon receiving sentences on both his burglary and theft convictions, we must consider whether burglary and theft merge." *Moffatt v. State*, 542 N.E.2d 971, 975 (Ind. 1989). In *Vestal v. State*, 773 N.E.2d 805 (Ind.2002), our supreme court relied on the two-part test from *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), in making this determination.

> In *Richardson*, we explained that two offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. To show that two challenged offenses constitute the same offense under the actual evidence test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Rihl v. State,* 413 N.E.2d 1046, 1054 (Ind.Ct. App.1980).

*Vestal,* 773 N.E.2d at 805–06 (citations and quotations omitted).

■ We first consider the actual elements test. "Burglary consists of the breaking and entering of a building or structure with the intent to commit a felony; theft is the unauthorized control over property of another person with the intent to deprive the other person of its value. Ind.Code §§ 35–43–2–1 and 35–43–4–2." *Moffatt*, 542 N.E.2d at 975. Clearly, the crimes of burglary and theft contain distinct elements and therefore do not constitute the same offense under the actual elements test.

As for the actual evidence test, facts tending to establish the theft in count VI included the pawn ticket containing the description of the VCR and Payne's signature and Mr. and Mrs. Payne's testimony regarding their ownership of the VCR. The burglary in count V is supported, in part, by the opened window, scattered photo albums, Payne's knowledge that his parents would be at work, Payne's familiarity with the house, and restrictions placed on Payne from visiting the house. We conclude that there is no reasonable possibility that the jury used the same evidentiary facts to convict Payne of both burglary and theft.

We hold that sentencing Payne on both counts would not violate Indiana's double jeopardy clause and that the trial court must therefore sentence Payne on both counts under Indiana Code Section 35–50–1–1. We remand with instructions to sentence Payne on count VI.

Affirmed in part, reversed in part, and remanded for sentencing.

KIRSCH, J., concurs.

DARDEN, J., concurs in part and dissents in part, with opinion.

DARDEN, Judge, concurring in part and dissenting in part.

I concur with the majority that the defendant's conviction for burglary as a class B felony as charged in Count III should be reversed. I also agree with the majority that the defendant's conviction for burglary as a class B felony as charged in Count V should be affirmed. I further agree with the majority that the trial court did not commit reversible error when it denied the defendant's motion for severance of the counts for trial purpose. However, I must respectfully disagree and hereby dissent from the majority's conclusion to remand this case to the trial court for imposition of sentencing for theft, which the trial court determined had merged into the sentencing for burglary.

Just as the "federal Bill of Rights ... was designed to protect people against the national government," Indiana's Bill of Rights was written to protect the civil liberties of citizens "from the excesses of government." Chief Justice Randall T. Shepard, *Second Wind for the Indiana Bill of Rights*, 22 IND. LAW REV. 575, 576 (1989). In fact, our Bill of Rights "afforded Hoosiers rights which the federal Constitution did not." *Id.* at 577. Consistent with this premise, the protections found in the Double Jeopardy clause of our Bill of Rights have been found to be broader than those defined by federal double jeopardy jurisprudence. *See Richardson v. State*, 717 N.E.2d 32, 53–54 (Ind.1999).

My research revealed no case in which an appellate court has held that a trial court erred when it did not impose a sentence for one of a number of offenses which the defendant had been found guilty of committing. In *Reaves v. State*, 586 N.E.2d 847, 853 (Ind.1992), upon facts which I acknowledge to be distinguishable, the State argued that a remand was necessary for sentencing on such a conviction for which no sentence had been imposed, but our supreme court found no error.

Effectively, the majority has concluded our Double Jeopardy clause mandates that the trial court sentence Payne on both the burglary and theft convictions. Had the trial court done so, it is arguable that Payne would not have succeeded with an appeal claiming violation of his rights under Indiana's Double Jeopardy clause. Nevertheless, I cannot agree—given the voluminous quantity of precedents that emphasize the trial court's discretion in sentencing—that the Bill of Rights of our Constitution requires that we remand this case to the trial court for imposition of sentencing for the crime of theft.

Therefore, I would affirm the trial court on this issue.