**Robert WRIGHT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0304–CR–188.**

Court of Appeals of Indiana.

Jan. 16, 2004.

Transfer Granted April 14, 2004.

Karen C. Horseman, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Robert Wright (Wright) appeals his convictions for Count I, burglary, a Class C felony, Ind.Code § 35–43–2–1 and Count II, theft, a Class D felony, I.C. § 35–43–4–2.

We affirm, in part, and reverse and remand, in part.

### ISSUES

Wright raises one issue on appeal, which we restate as follows: whether the evidence presented by the State was sufficient to support Wright's conviction.

On cross-appeal, the State raises one issue, which we restate as follows: whether the trial court erred in merging Wright's convictions for theft and burglary for sentencing purposes.

### FACTS AND PROCEDURAL HISTORY

On November 13, 2002, at approximately 2:20 a.m., Indianapolis Police Department (IPD) Officer William Sluder (Officer Sluder) was dispatched to the Puff–N–Chew tobacco store (tobacco store) located at 1702 Southeastern Avenue in Marion County, Indianapolis, Indiana. Officer Sluder was responding to the alarm system that was activated minutes earlier inside of the tobacco store. As the IPD dispatch broadcasted the alarm activation, IPD Officer Hartman (Officer Hartman) was driving southbound on State Avenue, passing Southeastern Avenue, where the tobacco store is located. Officer Hartman observed the window on the south side of the building was missing.

A few minutes prior to the alarm run, Officer Hartman also saw two black males on the railroad tracks in the area just north and east of the tobacco store. Thus, Officer Hartman alerted other IPD officers in the vicinity of the description of the two males he saw in that area. In particular, Officer Hartman testified that he observed one male wearing a blue jean jacket with white sleeves, which was later determined to be Wright; and another male wearing a red jacket, who was later determined to be Joseph Walker (Walker).

IPD Officer Jason Edwards (Officer Edwards) was in the same area and responded to the broadcast. Officer Edwards observed two men near the railroad tracks who matched the description. Officer Edwards, along with IPD Officer Jamie Guilfoy (Officer Guilfoy), approached the two men and questioned them. Officer Guilfoy spoke with the two men separately, and noticed that the men told conflicting stories about where they had previously been. Further, when Officer Guilfoy questioned Wright, he told the IPD officers his name was Bobby Burton.

While searching the area where Walker and Wright were earlier seen, Officer Guilfoy found a trash bag and a box full of cartons of Newport News and Camel cigarettes. In the meantime, David Cooper (Cooper), the owner of the tobacco store, arrived at the tobacco store and noticed

that a window was removed and approximately 50 cartons of Newport News and Camel cigarettes were missing. Wright's fingerprints were later recovered from one of the cartons of Newport News cigarettes found in a bag near the railroad tracks. Videotape surveillance from inside the tobacco store shows a person inside wearing a dark hooded jacket with white or tan sleeves. On the night of the burglary, Wright wore a hooded, blue denim jacket with tan sleeves.

On November 14, 2002, the State filed an information against Wright, charging him with Count I, burglary, a Class C felony, I.C. § 35–43–2–1; and Count II, theft, a Class D felony, I.C. § 35–43–4–2. On January 8, 2003, the State filed an Amended Information to correct a clerical error in the prior Information. In particular, the State added the words "knowingly or intentionally" to Count I, burglary, a Class C felony.

On February 13, 2003, a bench trial was held. At the conclusion of trial, the trial court found Wright guilty of Count II, theft, a Class D felony. The trial court took under advisement Count I, burglary, a Class C felony. On February 14, 2003, the trial court entered its conviction against Wright for Count I, burglary, a Class C felony.

On March 25, 2003, a sentencing hearing was held. The trial court merged Count II, theft, a Class D felony, into Count I, burglary, a Class C felony. At the hearing, the trial court sentenced Wright to five years at the Department of Correction, with 133 days credit for time served.

Wright now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Wright contends that the evidence presented by the State was insufficient to support his conviction for burglary. Specifically, he argues that the State failed to prove beyond a reasonable doubt that he broke into the tobacco store with the intent to steal the cigarettes.

■ Our standard of review for sufficiency claims is well settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or assess the credibility of witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct. App.2002). We consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences that can be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App. 2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Cox*, 774 N.E.2d at 1028–29. A judgment may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind.2000).

Indiana Code section 35–43–2–1, in pertinent part, provides:

A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony.

Thus, in order to convict Wright for burglary, a Class C felony, the State was required to prove that Wright broke and entered into the tobacco store with the intent to commit a felony therein, specifically, theft, which is exercising unauthorized control of the property of another with the intent to deprive the other of any part of the property's value or use. I.C. § 35–43–2–1; I.C. § 35–43–4–2.

■ In the instant case, Wright argues that his conviction of this charge cannot stand because there is insufficient evidence to establish that he broke and entered into

the tobacco store with the intent to steal cigarette cartons found near the railroad tracks. In support of his argument, Wright directs this court's attention to a copy of the videotape surveillance cameras inside the tobacco store. In particular, Wright claims that the videotape is insufficient to establish that he was inside the tobacco store during the burglary.

Our review of the record indicates otherwise. Specifically, the videotape surveillance shows a man inside the tobacco store wearing a hooded jacket with white or tan sleeves. The record also reveals that Wright wore a hooded blue jean jacket with white sleeves on the night of the burglary. Nevertheless, Wright argues that because the color of the sleeves on the jacket of the person inside the tobacco store is unclear on the videotape, there is no way to positively identify Wright as the person on the videotape. However, Wright is merely asking this court to reweigh the evidence. This is an invitation that we must decline. *See Cox*, 774 N.E.2d at 1028–29.

Additionally, the tobacco store owner, Cooper, testified that he did not allow anyone inside the tobacco store during 2:05 a.m. and 2:09 a.m., the time during which the burglary occurred. The record reveals that Wright was noticed in the area of the tobacco store around 2:20 a.m. In fact, Wright was walking along the railroad tracks only 50 yards from the tobacco store. Further, Wright's fingerprints were positively identified on one of the cartons of cigarettes that were found near the railroad tracks. Cooper testified that he did not give permission to anyone to take the cartons of cigarettes that were found near the railroad tracks. Consequently, we find that the evidence was sufficient to prove that Wright broke and entered into the tobacco store and stole the cartons of cigarettes.

Based upon all of the above, we find that there was substantial evidence of probative value to support the conclusion of the trial court. *See Cox*, 774 N.E.2d at 1028–29. Accordingly, we conclude that the State presented sufficient evidence to support Wright's conviction for burglary and theft. *See Cox*, 774 N.E.2d at 1028–29.

*Sentencing*

On cross-appeal, the State argues that the trial court abused its discretion in sentencing Wright. In particular, the State alleges that the trial court was not required to merge Wright's conviction for theft into his burglary conviction, because theft and burglary constitute distinct crimes. As a result, the State contends that sentences for both convictions would not violate the Indiana Double Jeopardy rule.

On the contrary, Wright asserts that the trial court did not err in merging his convictions for Count II, theft, a Class D felony, into Count I, burglary, a Class C felony. Although Wright maintains that there was not sufficient evidence to convict him of burglary, nevertheless, imposing a sentence on both convictions would violate the Indiana Double Jeopardy rule.

To determine whether Wright was subjected to double jeopardy upon receiving sentences on both his burglary and theft convictions, we must consider whether burglary and theft merge. *Payne v. State*, 777 N.E.2d 63, 68 (Ind.Ct.App.2002); *Moffatt v. State*, 542 N.E.2d 971, 975 (Ind. 1989). In *Vestal v. State*, 773 N.E.2d 805 (Ind.2002), our supreme court relied on the two-part test from *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), in making this determination.

In *Richardson*, we explained that two offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, with respect to either the stat-

utory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. To show that two challenged offenses constitute the same offense under the actual evidence test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Vestal,* 773 N.E.2d at 805–06 (citations and quotations omitted).

At the outset, we note that, during the trial, the State urged the trial court to merge Count II, theft, into Count I, burglary. Specifically, the following colloquy occurred between the trial court and the State:

[STATE:] ... I'd also like to point out that I think that the Theft does merge in with the Burglary....

THE COURT: You agree that the Theft does merge?

[STATE:] Yes.

THE COURT: Okay. In that case then we should only show a conviction on Count One. Show Count Two merging into One....

(Tr. p. 119). However, the State now argues that the trial court abused its discretion by merging Count II, theft, into Count I, burglary and not sentencing Wright on both Counts. Nevertheless, we find that the trial court did not abuse its discretion in sentencing Wright.

■ We first consider the actual elements test. "Burglary consists of the breaking and entering of a building or structure with the intent to commit a felony; theft is the unauthorized control over property of another person with the intent to deprive the other person of its value. I.C. §§ 35–42–2–1, 35–43–4–2." *See Moffatt,* 542 N.E.2d at 975. Clearly, the crimes of burglary and theft contain distinct elements and therefore do not constitute the same offense under the actual elements test. *See Payne,* 777 N.E.2d at 68.

As for the actual evidence test, facts tending to establish the theft in Count II included the cartons of cigarettes removed from the tobacco store, Wright being identified in the area near the tobacco store, and Wright's fingerprint's removed from one of the cartons of cigarettes stolen from the tobacco store. The burglary in Count I is supported, by the broken window, which the person gained unauthorized entry into the tobacco store and the surveillance videotape with a person similar to Wright and wearing similar clothing as Wright on that particular night. Thus, there is no reasonable possibility that the trial court used the same evidentiary facts to convict Wright of both burglary and theft. *See id.*

Furthermore, considering the abundant evidence presented at trial—a person matching the description of Wright on the surveillance video, a broken window in order to gain entry into the tobacco store, IPD officers seeing Wright near the scene of the burglary, Wright's inconsistent stories when questioned by the IPD officers, Wright's fingerprints on a carton of cigarettes stolen from the tobacco store, and Wright giving the IPD officers a false name when questioned—we decline Wright's claim that the evidence used by the trial court to establish the commission of burglary was also used to establish theft, in violation of the Indiana Double Jeopardy Clause. *See id.*

Although the State initially requested, and the trial court obliged, that the two convictions should be merged into one, we

find that this was error. Under the *Richardson*, actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). There is ample evidence in the record that proves that the same evidentiary facts were not presented to the trial court to establish both offenses. Accordingly, we remand to the trial court with instructions to sentence Wright for Count II, theft, a Class D felony.

## CONCLUSION

Based on the foregoing, we conclude that Wright was properly convicted of burglary, a Class C felony. We further find that the trial court erred by merging Wright's convictions for Count II, theft, a Class D felony, into Count I, burglary, a Class C felony. Consequently, we remand to the trial court with instructions consistent with this opinion.

Affirmed, in part, and reversed and remanded, in part.

DARDEN, J., concurs.

BAILEY, J., concurs as to Issue I and dissents with opinion as to Issue II.

BAILEY, Judge, dissenting in part.

I respectfully dissent from the majority's determination that the trial court erred by merging Wright's conviction for theft as a Class D felony into his conviction for burglary as a Class C felony. First, the issue of whether it was proper for the trial court to merge Wright's theft conviction into his burglary conviction arose solely from the State's cross appeal. However, at trial, the State "point[ed] out" to the trial court that "the [t]heft does merge in with the [b]urglary." Tr. at 119. The

following colloquy between the trial court and the State ensued:

> [Court:] You agree that the Theft does merge?
>
> [State:] Yes.

*Id.* The trial court then merged the theft conviction into the burglary conviction.

It is well settled that a party may not appeal invited error. *Beeching v. Levee*, 764 N.E.2d 669, 674 (Ind.Ct.App.2002) (holding appellant waived arguments regarding admissibility of grievances when he offered five of them for admission himself). Here, the State invited the merger that it now claims as error. Indeed, the trial court acted at the State's behest when it merged the theft conviction into the burglary conviction. Accordingly, the State has waived any claim of error associated with the merger. *See generally State v. Keith*, 507 N.E.2d 245, 245 (Ind.Ct.App. 1987) ("A party may not sit idly by, permit the [trial] court to act in a claimed erroneous manner, and then attempt to take advantage of the alleged error at a later time. A timely objection must be asserted so that the trial court has an opportunity to promptly correct the alleged error.")

Waiver notwithstanding, the trial court did not err by merging Wright's theft conviction into his conviction for burglary. Indiana Code Section 35–50–1–1 provides that: "The court shall fix the penalty of and sentence a person convicted of an offense." The trial court's decision to merge Wright's theft conviction into his burglary conviction, at the State's request, was apparently motivated by perceived double jeopardy concerns. In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), our supreme court enunciated the following two-part test:

> two offenses are the "same offense" and thus violate double jeopardy if, with respect to either the statutory elements of

the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

*Id.*

In the present case, I agree with the majority that the offenses of burglary and theft each contain statutory elements that are separate and distinct from the other.[1] In brief, to convict Wright of burglary, the State was required to prove that he broke into and entered a building, with the intent to commit a felony therein. IND.CODE § 35–43–2–1. To convict Wright of theft, the State had to prove that he knowingly or intentionally exerted unauthorized control over the property of another, with intent to deprive that person of any part of its value or use. IND.CODE § 35–43–4–2(a). Thus, to obtain a conviction for burglary, it was not necessary for the State to prove that Wright committed theft because the burglary is complete upon the breaking and entering *with* the intent to commit the theft; likewise, a conviction for theft does not require a breaking and entering. Therefore, each of the offenses contains at least one element that is separate and distinct from the other offense. *See Vestal v. State*, 773 N.E.2d 805, 807 (Ind.2002) ("*Vestal II* ").

However, I take issue with the majority's analysis regarding the application of the actual evidence test of double jeopardy. In *Vestal v. State*, 745 N.E.2d 249, 250 (Ind.Ct.App.2001) ("*Vestal I*"), another panel of this court held, in part, that the defendant's convictions for burglary as a Class C felony and theft as a Class D felony did not constitute double jeopardy. There, the defendant, who lived in Terre Haute, Indiana, asked his son "if he wanted to make some money," and the son answered in the affirmative. *Id.* The defendant and his son then went to a liquor store in Brazil, Indiana, and "pried the door open with a crowbar." *Id.* The two men next entered the store, took several items of property including beer and cigarettes, and returned to Terre Haute. *Id.* The defendant was later apprehended and convicted of Class C felony burglary and Class D felony theft. *Id.* at 251.

On direct appeal, the defendant argued that his burglary and theft convictions violated Indiana's prohibition against double jeopardy because "the jury used the same evidence to convict him on both crimes." *Id.* The *Vestal I* court properly observed that the defendant's convictions did not violate the statutory elements test of the double jeopardy clause. *Id.* The *Vestal I* court then determined that because "the evidence of the intent to commit the theft required for the burglary is the same evidence required to prove the theft," a strict application of *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), would result in a finding of double jeopardy under the actual evidence test. *Vestal I*, 745 N.E.2d at 251–52. Opining that our supreme court could not have intended such a result, the *Vestal I* court ultimately held that the defendant's convictions for burglary and theft did not constitute double jeopardy because even though the actual commission of the theft was used to prove the

---

**1.** The majority uses the phrase "actual elements" in lieu of the phrase "statutory elements" to refer to the statutory elements test enunciated in *Richardson*. I have come across four post-*Richardson* cases that, too, use the phrase "actual elements" instead of "statutory elements," compared to over ninety post-*Richardson* cases that employ the phrase "statutory elements." Our nomenclature has blurred the lines between the labels "statutory elements" and "actual elements" in reference to the statutory elements test pertinent to a double jeopardy analysis. I prefer to use the language "statutory elements" as in *Richardson*.

intent element of burglary, theft was a distinct act from the burglary itself. *Id.* at 252.

The defendant in *Vestal I* appealed to the Indiana Supreme Court arguing that his theft and burglary convictions violated the actual evidence test of double jeopardy. On transfer, our supreme court vacated *Vestal I* only as to its discussion of double jeopardy. *Vestal II,* 773 N.E.2d at 807. Specifically, the *Vestal II* court found that, under the facts presented, there is no reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both burglary and theft. The court noted the following:

> The evidentiary facts establishing the commission of theft (removing goods and cash from the liquor store with the intent to deprive the owner of its use or value) do not also establish that the defendant broke and entered the store. Similarly, the evidentiary facts establishing the commission of burglary (discussing desire to get money and then driving from Terre Haute to Brazil in the early morning hours and using crowbar to break into and enter liquor store) do not also establish that the defendant exerted control over and removed goods and cash from the store.

*Id.*

Further, in *Vestal II,* the defendant had relied upon *Marcum v. State,* 725 N.E.2d 852, 864 (Ind.2000), wherein the Indiana Supreme Court vacated an auto theft conviction because there was at least a reasonable possibility that the jury used the same evidentiary fact—i.e., the theft of a van—to prove an essential element of the conspiracy to commit burglary and also the essential elements of auto theft. *Id.* In discussing *Marcum,* the *Vestal II* court recognized that:

> We reached that reasoned conclusion because the jury instructions on the con-

spiracy offense required the jury to use the specific facts of the auto theft to constitute the overt act element of the conspiracy. Unlike *Marcum,* the present case presents separate evidence of the defendant's intent at the time of the breaking and entering. In addition, the *Marcum* conspiracy instruction informed the jury that proof of the completed auto theft was the overt act of the conspiracy, whereas, in the present case, the instructions did not direct the jury to find the elements of the completed theft in order to establish the defendant's intent at the time of the breaking and entering.

*Id.* at 807.

Armed with this distinction of *Marcum,* the *Vestal II* court held that the defendant did not establish a reasonable possibility that the jury used the same evidentiary facts to convict him of two offenses because the evidence presented at trial to establish the burglary offense—i.e., the defendant asking his son if he wanted to make some money, driving to Brazil in the middle of the night, going to the liquor store, taking out the crowbar and breaking a window and prying open the door, and entering the store—did not also establish the commission of the theft, in violation of the Indiana Double Jeopardy Clause. *Id.*

Here, unlike in *Vestal II,* the only evidence of Wright's intent to commit a felony at the time he committed the breaking and entering is the commission of the theft itself. Indeed, the fact-finder, i.e., the trial court, and the State both agreed, at least implicitly, that to establish the "intent to commit a felony" element of burglary, the fact-finder had to rely upon the actual commission of the theft itself. The record in this case reveals that Wright broke into and entered the store, walked around inside, and took cigarettes. Wright hurriedly left the store when the alarm sounded

and police officers found him approximately fifteen minutes later in close proximity to the store and the boxes of stolen cigarettes. Thus, the only evidence of Wright's intent to commit theft after breaking into and entering the store is the fact that he took cigarettes while inside the store. Other than the actual commission of the theft, the record reveals no independent evidence regarding Wright's intent to commit a felony after he broke into and entered the store. As such, the trial court did not err by merging Wright's theft conviction into his burglary conviction based upon double jeopardy concerns.

For these reasons, I respectfully dissent from the majority opinion.