**Jeff DAVIS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 42S00–0003–CR–187.

Supreme Court of Indiana.

March 6, 2001.

Timothy J. Miller, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Jeff Davis appeals his conviction for felony murder by asserting that the State's evidence was insufficient to support the element of breaking necessary for the predicate offense of burglary. He makes out a respectable case, but at the end of the day we affirm.

### Facts and Procedural History

On December 16, 1998, Beth Geyer lured Floyd Wampler away from his home by asking him to give her car battery a jump. (R. at 586, 591, 632.) Wampler was known to keep a large amount of cash on him, (R. at 395–96, 410–11, 588, 623), and several guns in his home, (R. at 396, 417–18, 690), located on a farm in Knox County, (R. at 423, 548).

After cutting the phone line, Davis and Geyer's son Jesse Ennsmann entered the home through the same garage door from which Wampler exited. (R. at 592, 597–98.) They carried a flashlight, a bat, and duct tape to "knock[ ] the man out and tap[e] him up." (R. at 586–87, 668.)

Davis and Ennsmann looked around the house for money. (R. at 598.) They ended their search abruptly, after Ennsmann noticed from a window that Wampler was returning. (R. at 601–02.) They departed the home carrying three guns they found, but left behind their flashlight and duct tape. (R. at 602, 668–69.) Wampler later reported the incident and had his phone line repaired. (R. at 729, 741–44.)

Because of this December burglary, Graydon June Goodwin was house-sitting Wampler's home on January 7, 1999, while Wampler was in the hospital recovering from a stroke. (R. at 364, 405, 688.) Two neighbors, Eddie Westfall and Ed Schrieffer, knew that Goodwin was now taking care of Wampler's place and decided to go check on Goodwin because "no one had heard from [him] and they were concerned about him." (R. at 364.) Westfall called Wampler's nephew, Mark Wampler, and asked that he meet them at the farm. (R. at 392, 403–05.)

After arriving at Wampler's farm, Westfall and Schrieffer went to the side entrance of the house where they "always use to go in," but found out that the door was locked. (R. at 389–90.) Westfall shined a flashlight in the window and saw Goodwin lying on the floor. (R. at 390.) He walked to the front door and noticed it was ajar. (*Id.*) He entered the home, looked at Goodwin and then walked back outside. (*Id.*)

Westfall tried to use a phone in the barn, but the line was dead. (R. at 391.) He entered the home again in order to determine if Goodwin was alive, but found no pulse. (R. at 392.) Westfall and Schrieffer drove to a neighbor's home, asked the neighbor to contact the police, and then returned to Wampler's home, where Mark later met them. (R. at 392, 407.)

After Westfall told Mark that they found Goodwin's body in the house, Mark contacted Dave Anderson, a crime scene technician with the Indiana State Police, who instructed him to remain in his truck. (R.

at 408, 427, 432.) On his way to the home, Anderson called the State Police post. (R. at 433.) Anderson arrived at the home, spoke to Mark and Westfall and then entered the house only to confirm that Goodwin was deceased. (R. at 433–35.) Later, detectives and more police officers arrived. (R. at 435, 701–02, 772–73.)

Detective Greg Winkler of the Indiana State Police was one of those who arrived. (R. at 700–01.) He did not observe any signs of forced entry in any of the doors or windows. (R. at 730–31.) He noticed that a few drawers were open in the kitchen; they appeared to have been searched. (R. at 732.) He did not see any sign of a struggle in the home other than how some of the couch cushions were tossed on the couch. (R. at 733.)

The forensic pathologist who performed the autopsy determined that Goodwin's death resulted from blood loss caused by damage from a gunshot wound to the facial regions of the head. (R. at 338, 351.) The pathologist also concluded that the manner of death was homicide. (R. at 339, 351–52.)

A few days later, Geyer made an anonymous phone call to the police informing them of a conversation that she heard between Davis and Jack Wadsworth regarding the night of Goodwin's death. (R. at 644–46, 703.) Geyer said that Davis and Wadsworth discussed "going and finishing a job and ... getting lots of money and stuff...." (R. at 644.) Subsequently Geyer, Ennsmann and Davis admitted their involvement with the December burglary. (R. at 639, 648–49, 592–602, 723, State's Exh. 138.)

The State charged Davis with burglary and theft for his involvement regarding the events on December 16, 1998. It also charged felony murder, burglary and theft in relation to the events that occurred on January 7, 1999. The trial court returned guilty verdicts on all counts. The court merged the burglary and theft counts into the felony murder count with a sentence of fifty-five years. It also sentenced Davis to fifteen years for the December 16th burglary and a concurrent term of three years for the December 16th theft. The net result was seventy years.

## Sufficiency of the Evidence

Davis claims that the evidence presented by the State was insufficient to convict him of burglary or felony murder in connection with the January death of Goodwin. Specifically, he contends the State failed to prove a "breaking," one of the necessary elements for the crime of burglary.

■ When reviewing convictions for sufficiency of the evidence, we look to the evidence most favorable to the verdict and all of the reasonable inferences that evidence provides. *Baker v. State*, 273 Ind. 64, 402 N.E.2d 951 (1980). We do not reweigh the evidence or determine the credibility of witnesses. In addressing an insufficiency claim, we determine whether there was substantial probative evidence to support the judgment. *Id.* If a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt, we will affirm the decision of the trial court. *Case v. State*, 458 N.E.2d 223 (Ind.1984).

■ To prove burglary as charged, the evidence must show that Davis did knowingly break and enter into Wampler's home with an intent to commit a felony in it (in this case, theft). *See* Ind.Code Ann. § 35–43–2–1 (West 1998). The element of breaking is satisfied by showing that even the slightest force was used to gain unauthorized entry. *Trice v. State*, 490 N.E.2d 757 (Ind.1986). Opening an unlocked door or pushing a door that is slightly ajar constitutes a breaking. *Utley v. State*, 589 N.E.2d 232 (Ind.1992), *cert. denied*, 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993). The occurrence of a breaking may be proven entirely by circumstantial evidence. *McCovens v. State*, 539 N.E.2d 26 (Ind.1989).

Davis asserts that the State did not present "testimony nor direct evidence of a breaking." (Appellant's Br. at 7.) He ar-

gues that the evidence is sufficient only to conclude that he and Wadsworth "scheme[d] to get Goodwin to open an outer door to the house and allow one of them to sneak in without having to break in." (Appellant's Br. at 8.)

Our inquiry on appeal is not whether a trier of fact may have accepted the version of events proposed by Davis. Rather, we determine whether the verdict is supported by an inference reasonably drawn from the evidence presented. We conclude that it was.

We have encountered other cases in which there was no overt physical sign of a forced entry. In *Utley*, for example, a woman and her child were found murdered in their home, on the floor of the bedroom. 589 N.E.2d at 241. The victim's husband testified that the doors to the home remained locked and were locked when he left the home on the day of the murder. *Id.* He also testified that the victim would not open the door for a stranger. *Id.* When the victim's body was found, the rear door of the home was unlocked. *Id.* We found this evidence sufficient, saying, "From this testimony one could infer that force was used to gain entry without the victim's permission." *Id.*

 Similarly, in this case the State presented circumstantial evidence that Goodwin would not have permitted Davis to enter Wampler's home. The evidence revealed that the home was burglarized on December 16, 1998, after a stranger lured Wampler away from his home. Wampler reported the incident to the police and informed his friend Goodwin. In his statement, Davis admitted that he planned and participated in the first burglary.

On January 7, 1999, while Wampler was in the hospital, Goodwin stayed at Wampler's home in order to guard against another burglary attempt. His stepdaughter testified that Goodwin planned to sleep on the couch with a gun next to him. (R. at 659, 673.) Goodwin was prepared to confront any stranger who got into the house. Davis and Wadsworth were strangers to Goodwin.

Goodwin's body was found, with a flashlight under his arm, near the couch. (R. at 441.) The front door of the room was ajar and the door to the garage was locked. Testimony revealed that when Goodwin let visitors into Wampler's home, he let them in through the door near the garage. (R. at 682.)

Davis admitted in his statement that he was in Wampler's home when his friend Wadsworth shot Goodwin in the head. Davis also admitted that after Goodwin was shot, he left the home and "came back a few times." (R. at 723, State's Exh. 138.)

As in *Utley*, this evidence allowed a reasonable inference that Davis' entry was unauthorized. Moreover, we think it implausible that a man occupying a home solely to guard against entry of potential burglars would willingly let two strangers in the front door.

Consequently, the evidence was sufficient to convict Davis of burglary. Because Davis' murder charge was based upon the commission of burglary and accomplice liability for the death of Goodwin, the evidence was also sufficient to convict him of felony murder.[1]

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

1. Indiana Code § 35–42–1–1(2) states, "A person who kills another human being while committing or attempting to commit ... burglary ... commits murder, a felony."