Jack R. WADSWORTH, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 42S00–9909–CR–490.

Supreme Court of Indiana.

July 17, 2001.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, J. Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury convicted appellant Jack Wadsworth of murder and burglary. He now appeals these convictions, asserting that the trial court erred when it refused his reckless homicide instruction. He also claims that the evidence was not sufficient to prove the "breaking" element of burglary. We affirm.

### Facts and Procedural History

On December 16, 1998, Beth Geyer, Jeff Davis and Jesse Ennsman burglarized Floyd Wampler's home, located on a farm in Knox County. Wampler kept a large amount of cash on him, and several guns in his home. Davis and Ennsman searched the home for these items and found a few guns.

On January 7, 1999, Graydon June Goodwin was house-sitting Wampler's home while Wampler was in the hospital recovering from a stroke. Two neighbors, Eddie Westfall and Ed Schriefer, arrived at Wampler's home to check on Goodwin and found him lying on the floor inside the home. Goodwin died from blood loss caused by a gunshot wound to the facial regions of the head.

Westfall and Schriefer noticed that the front door was ajar and that the side entrance that visitors always used was locked. (R. at 762, 836–38, 1130, 1143.) Detective Dave Anderson of the Indiana State Police did not observe any signs of forced entry in any of the doors or windows. (R. at 143.)

On January 10, 1999, Geyer anonymously called the police and informed them that she heard Jack Wadsworth and Davis discuss "going back and finishing the job and then they'd have lots of money and other things." (R. at 1166–68, 1172–74, 1205–06.) Two days later, in a taped statement, Wadsworth said that he and Davis went to Wampler's home because Davis said that they could get some money there. (Supp. R. at 68, 75, 89, 92, 94, 102.) Wadsworth said that he and Davis first tried to get in the basement window. (Supp. R. at 101–03.) Wadsworth explained that Goodwin let them in the front door after they told him that they were cold and needed to use the bathroom. (Supp. R. at 67–69, 73, 99, 101–03.)

Wadsworth said that he went to the bathroom where he found and examined a gun. (Supp. R. at 67, 69.) He pulled the bolt back and discovered that the gun was loaded. (Supp. R. at 69, 90.) When he replaced the gun, it began to tip over so he picked it up again. (Supp. R. at 70, 90.) After opening the bathroom door, he says he pointed the gun at the window and accidentally fired the gun at Goodwin coming around to the bathroom. (Supp. R. at 66–67, 70–72, 91, 95.) The bullet struck Goodwin in the head. (Supp. R. at 67, 77–78, 95; R. at 1071.)

Wadsworth and Davis took several guns, phones and rings from the house. Wadsworth later told his fiancé that he shot Goodwin.

The State charged Wadsworth with murder, burglary and theft. At trial, the court denied Wadsworth's tendered instruction for reckless homicide as a lesser included offense to murder. The jury returned guilty verdicts on all counts. The trial court sentenced Wadsworth to sixty-five years for murder, to be served consecutively with his concurrent sentences of fifteen years for burglary and three years for theft.

## I. Jury Instruction

■ Wadsworth asserts that the trial court erred when it refused his tendered instruction on reckless homicide as a lesser included offense of murder. We disagree.

■ When a defendant requests an instruction for a lesser included offense of the charged crime, a trial court must follow the steps laid out in *Wright v. State,* 658 N.E.2d 563 (Ind.1995). At issue in this case is the last of these steps: whether there is a serious evidentiary dispute regarding the element distinguishing the greater offense from the lesser offense. *Id.* at 567. If such a dispute exists and "a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction...." *Id.* When, as in this case, "the record provides neither a finding that there is no serious evidentiary dispute nor a specific claim from the defendant as to the nature of that dispute, the standard of review is an abuse of discretion." *Brown v. State,* 703 N.E.2d 1010, 1020 (Ind.1998).

We thus examine the evidence to determine whether a serious evidentiary dispute existed regarding Wadsworth's shooting Goodwin. Wadsworth asserts that be-cause "he was handling a loaded gun, with which he was not familiar, inside a small house with other persons present, late at night," a jury could have concluded that his action was reckless rather than knowing. (Appellant's Br. at 10.)

A person acts " 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so," whereas, a person acts " 'recklessly' if he engages in the conduct in plain, conscious and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code Ann. § 35–41–2–2(b),(c) (West 1998).

In his confession, Wadsworth stated that he discovered a gun while using Wampler's bathroom. After opening the door of the bathroom, he fired the gun causing a bullet to penetrate Goodwin's face. Other evidence revealed that this gun required a great deal of trigger pressure to fire. (R. at 1072, 1140–41, 1333–34.) Moreover, a forensic pathologist testified that Goodwin likely was shot at close range. (R. at 1071–72.)

From this evidence, we think the trial court was warranted in finding no serious evidentiary dispute about the state of Wadsworth's knowledge. Wadsworth must have known that firing directly at a person at such close range is highly probable to result in death. *See Sanders v. State,* 704 N.E.2d 119, 121–23 (Ind.1999) (no serious evidentiary dispute where defendant killed victim by firing handgun at close range); *Owens v. State,* 544 N.E.2d 1375, 1377 (Ind.1989)(firing gun in direction of individual is substantial evidence from which jury may infer intent to kill).

The trial court did not abuse its discretion in refusing Wadsworth's reckless homicide instruction.

## II. Sufficiency of Evidence

■ Wadsworth next asserts that the evidence presented at trial was insufficient to convict him of burglary. He maintains that the State failed to prove the occurrence of a "breaking," as required in the crime of burglary.

■ When reviewing a conviction for the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Baker v. State*, 273 Ind. 64, 402 N.E.2d 951 (1980). Instead, we look to the evidence most favorable to the verdict and all of the reasonable inferences that evidence provides to determine whether there is substantial evidence of probative value to support the judgment. *Id.* If a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt, we will affirm the trial court's decision. *Case v. State*, 458 N.E.2d 223 (Ind.1984).

■ To convict Wadsworth of burglary, as charged, the evidence must prove that he did knowingly break and enter into Wampler's home with intent to commit a felony of theft in it. *See* Ind.Code Ann. § 35–43–2–1 (West 1998). The "breaking" element may be proven entirely by circumstantial evidence. *McCovens v. State*, 539 N.E.2d 26 (Ind.1989).

Wadsworth asserts that "Goodwin had let him and Davis in the front door, because they were cold and needed to use the bathroom." (Appellant's Br. at 12.) He supports this contention with the fact that Wampler's home showed no signs of forced entry. (*Id.*) We recently examined the sufficiency of the "breaking" evidence with regard to these same facts in *Davis v. State*, 743 N.E.2d 751 (Ind.2001).

In *Davis*, Wadsworth's partner-in-crime also asserted that evidence of a "breaking" was insufficient where there were no signs of forced entry. *Id.* at 753. Davis stated that he and Wadsworth "scheme[d] to get Goodwin to open an outer door to the house and allow one of them to sneak in without having to break in." *Id.* at 754. We held there, as we do here, that "the State presented circumstantial evidence that Goodwin would not have permitted [the defendant] to enter Wampler's home." *Id.* at 754.

Goodwin stayed at Wampler's home to guard against a burglary while Wampler was in the hospital recovering from a stroke. Wadsworth admits that he and Davis tried to enter the home through a basement window before approaching the front door of the home. Goodwin's body was discovered near the couch where he normally slept with a gun next to him. (R. at 839, 878, State's Exh. 18.) The door that Goodwin used to let visitors into Wampler's home was locked, and the front door was ajar.

As we said in *Davis*, "[T]his evidence allowed a reasonable inference that [the defendant's] entry was unauthorized. Moreover, we think it implausible that a man occupying a home solely to guard against entry of potential burglars would willingly let two strangers in the front door." *Davis*, 743 N.E.2d at 754. *See Utley v. State*, 589 N.E.2d 232 (Ind.1992), *cert. denied*, 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993)(husband's testimony that doors to home were locked when he left and that wife would not open door to stranger provided inference that force was used). Wadsworth's claim presents a close question, but we conclude the evidence was sufficient to convict him of burglary.

## Conclusion

We affirm the judgment of the trial court.

SULLIVAN, and RUCKER, JJ., concur.

DICKSON and BOEHM, JJ., concur as to Part I and dissent as to Part II.