**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOE KEITH LEWIS**
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY HENDERSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A02-1306-CR-495 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas Hakes, Judge
Cause No. 35C01-1108-FC-176

**January 7, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Timothy Henderson ("Henderson") appeals his conviction, following a jury trial, for Class C felony burglary.[1]

We affirm in part, remand in part.

## ISSUE

Whether sufficient evidence supports Henderson's burglary conviction.

## FACTS

In August 2011, Troy Johnson ("Johnson") lived in Allen County and owned approximately eighteen acres of land in Huntington County. This land included a house, a shed, a barn, a muddy pond, and farm land, and Johnson worked on improving the property during the weekends. The front doors of Johnson's shed were rail-sliding doors, and the back shed doors latched shut from the inside. At that time, Johnson did not have a lock for his front shed doors, but he "religiously closed" them whenever he left the property. (Tr. 195). Johnson—who had previously been a victim of an attempted burglary—had a surveillance camera installed on his property. The camera was a motion-sensored trail camera that took a "burst" of three photographs, each one second apart, when motion activated. (Tr. 261). The camera also put a date and time stamp on each photograph taken. Johnson regularly checked the surveillance camera's photo card to review any photographs that may have been taken during his absence from the property.

---

[1] Ind. Code § 35-43-2-1.

2

On August 7, 2011, Johnson put his son's fishing poles, one of which was orange, and tackle box in the shed, closed the shed doors, and then left the property. On August 10, 2011, around 3:15 p.m., Henderson—who had a large tattoo on his right upper arm—drove his red pickup truck onto Johnson's property, went into Johnson's shed, and took Johnson's fishing poles and tackle box. Johnson's surveillance camera took photographs of Henderson when he passed and activated the camera. The photographs show Henderson—with a visible large tattoo on his right upper arm—walking past the camera and toward the direction of the shed. Two and one-half minutes later, the camera took photographs showing Henderson carrying fishing poles, including an orange pole, and a tackle box while walking toward his truck. The camera then took photographs of Henderson's truck, including his front novelty plate and rear license plate, as he drove off of Johnson's property.

On August 13 or 14, 2011, Johnson returned to his property. Johnson's shed doors were closed, but he noticed that some of the contents of his shed were on the ground. Johnson reviewed the surveillance photographs later that day and saw the photographs of Henderson. Johnson contacted the police, who then located Henderson from his license plate.

The State charged Henderson with Class C felony burglary and alleged that he was an habitual offender.[2] On March 6, 2013, the trial court commenced a three-day jury trial. During opening statements, Henderson's attorney told the jury that Henderson was

---

[2] Initially, the State also charged Henderson with Class A misdemeanor trespass but dismissed that charge prior to trial.

3

conceding that he was on Johnson's property on the day of the burglary and that he was the person seen in the surveillance photographs. Henderson also admitted that he was the person in the photographs carrying fishing gear. During closing arguments, Henderson's counsel argued that the State had failed to prove the "breaking" element of burglary, suggesting that either Henderson may have walked onto the property with fishing gear or that he would not have had enough time to go open the shed doors and retrieve the fishing gear from the shed during the two and one-half minute span depicted by the surveillance photographs.

The jury found Henderson guilty as charged and determined that he was an habitual offender. The trial court imposed an aggregate sentence of twelve (12) years to be served in the Department of Correction.[3] Specifically, the trial court imposed a six (6) year sentence for Henderson's burglary conviction and enhanced it by six (6) years for his habitual offender determination. Henderson now appeals his burglary conviction.

## DECISION

Henderson argues that the evidence was insufficient to support his conviction for Class C felony burglary.

---

[3] During the sentencing hearing, the trial court imposed a six (6) year sentence for Henderson's burglary conviction and enhanced that sentence by six (6) years for his habitual offender determination. However, the sentencing order, abstract of judgment, and chronological case summary indicate that the trial court imposed a separate six (6) year sentence for Henderson's habitual offender determination and ordered that it be served consecutively to his burglary sentence. It is well settled that an "habitual offender finding does not constitute a separate crime nor does it result in a separate sentence, rather it results in a sentence enhancement imposed upon the conviction of a subsequent felony." *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001) (citing *Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997); *Pinkston v. State*, 436 N.E.2d 306, 307-08 (Ind. 1982)). Therefore, we remand to the trial court with instructions to correct the sentencing order, abstract of judgment, and chronological case summary to reflect that the six (6) year habitual offender enhancement serves as an enhancement of Henderson's Class C felony burglary sentence.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt . . . The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Additionally, circumstantial evidence alone may be sufficient to sustain a conviction. *Camm v. State*, 908 N.E.2d 215, 229 (Ind. 2009), *reh'g denied*.

Indiana Code § 35-43-2-1 provides that a person commits Class C felony burglary when he "breaks and enters the building or structure of another person, with intent to commit a felony in it[.]" Thus, to convict Henderson of Class C felony burglary as charged, the State was required to prove beyond a reasonable doubt that Henderson broke and entered Johnson's shed and took his fishing gear.

Henderson does not challenge the elements that he entered Johnson's shed or took his fishing gear. Instead, Henderson contends that the circumstantial evidence presented by the State was insufficient to support the element of breaking.

Our Indiana Supreme Court has explained that the "breaking" element may be established by "showing that even the slightest force was used to gain unauthorized entry." *Davis v. State*, 743 N.E.2d 751, 753 (Ind. 2001) (citing *Trice v. State*, 490 N.E.2d 757 (Ind. 1986)). Indeed, "[o]pening an unlocked door or pushing a door that is slightly

5

ajar constitutes a breaking." *Davis*, 743 N.E.2d at 753 (citing *Utley v. State*, 589 N.E.2d 232 (Ind. 1992), *cert. denied*). Furthermore, the occurrence of a breaking may be proven entirely by circumstantial evidence. *Id.* [4]

Henderson acknowledges that the State's evidence established that the shed door was closed three days before the burglary, but he contends that it was not reasonable for the jury to infer from this evidence that Henderson opened the door before entering the shed. Stated differently, Henderson contends that the State's evidence did "not establish a reasonable probability that the shed door remained closed when Henderson arrived on the afternoon of the 10th such that Henderson had to open it to gain entry." (Henderson's Br. 6).

Here, Johnson testified that he "religiously" closed the shed doors (Tr. 195) and that he was "absolutely" confident that he had closed the shed doors when he left the property on August 7, 2011. (Tr. 235). Johnson also testified that the shed's sliding doors were heavy and that they could not be opened by a strong wind or an animal. The photographs from Johnson's surveillance camera show Henderson arriving on Johnson's property on August 10th, walking past the camera, and later returning with Johnson's fishing gear in hand. Furthermore, Johnson testified that, aside from Henderson and his

---

[4] In a footnote, Henderson suggests that a "'reasonable theory of innocence'" instruction should have been given because the "*actus reus* of 'breaking and entering' was proven by circumstantial evidence only." (Henderson's Br. 5) (citing *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012)). We acknowledge that our Indiana Supreme Court has held that "when the trial court determines that the defendant's conduct required for the commission of a charged offense, the *actus reus*, is established exclusively by circumstantial evidence, the jury should be instructed" with a reasonable theory of innocence instruction. *Hampton*, 961 N.E.2d at 491. Here, however, Henderson concedes that he did not request such an instruction, and he does not raise any fundamental error argument regarding the lack of such an instruction. Thus, we comment no further on this issue.

truck, there were no other people or vehicles captured in any of his surveillance photographs taken during the time period of August 7, 2011 to August 14, 2011.

Henderson's argument that someone else could have opened the shed door during the three days between the time that Johnson left on August 7th and the time that the surveillance photographs show Henderson carrying Johnson's fishing gear shed on August 10th is nothing more than an invitation to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146. Because there was probative evidence from which the jury could have found that Henderson broke into Johnson's shed, we affirm his conviction for Class C felony burglary.

Affirmed in part, remanded in part.

MATHIAS, J., and BRADFORD, J., concur.