**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**RANDY M. FISHER**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUSTIN M. ALEXANDER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | Nos. 02A03-1310-CR-403 |
| | ) | 02A03-1310-CR-404 |
| STATE OF INDIANA, | ) | 02A03-1310-CR-405 |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause Nos. 02D06-1301-FB-7
02D04-1302-FB-18
02D04-1301-FB-4

**May 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**GARRARD, Senior Judge**

Justin M. Alexander seeks review of his convictions and sentences in these three separate but related criminal appeals. We affirm the trial court's judgment in each case but remand for clarification of the sentencing orders.

The facts and procedural history of each case are as follows:

A. Cause No. CR-404

On December 31, 2012, Barbara Nagy and her family left their house to attend a New Year's Eve party. They locked all of the house's doors and ensured that the windows were closed but left at least one window unlocked. When they returned home at 6:00 p.m. the next day, the front door was unlocked. A screen had been removed from the kitchen window and was on the ground outside. Someone had stolen their televisions, computers, game consoles, and a handgun. An officer was dispatched to the scene, and he found a palm print on a coffee table. A fingerprint examiner subsequently matched the palm print to Alexander. In addition, Alexander was later arrested after a vehicle chase as discussed below, and he had Nagy's gun at the time of the arrest. The Nagys did not know Alexander and had not given him or anyone else permission to enter their home in their absence.

The State charged Alexander with Class B felony burglary. Later, the State amended the charging information to add an habitual offender enhancement. The burglary charge was tried to a jury, and the jury found Alexander guilty. The habitual offender enhancement was tried to the bench, and the judge determined that Alexander was an habitual offender.

2

B. Cause No. CR-403

At five in the morning on January 7, 2013, fifty-nine-year-old Wanda Boehme stopped at a convenience store on her way to work. She noticed that a man, later identified as Alexander, watched her check out at the cashier's stand and transact business at the store's lottery machine before he walked outside. Boehme returned to her car, and Alexander followed her to her employer's parking lot. When she parked, she saw Alexander park his car in a nearby alley.

Boehme waited for a while before getting out of her car because the situation "didn't feel good." CR-403 Trial Tr. p. 34.[1] When she did, Alexander approached her with a handgun. Boehme swung her purse at him, but he backed her up against her car and demanded money. She gave him her cash. When Alexander demanded more, Boehme pressed the alarm button on her key fob, and the car alarm activated. Alexander told her to turn it off. Boehme refused, saying "shoot me, go ahead and shoot me they know who you are." *Id.* at 37. Alexander left and was apprehended several days later during a vehicle chase as discussed below. After his arrest, an officer transported him to the hospital for treatment. Alexander complained of being pepper sprayed during the arrest, saying "I know I been robbing and stuff but there's no cause for this." *Id.* at 76.

The State charged Alexander with Class B felony robbery. Later, the State amended the charging information to add an habitual offender enhancement. The robbery charge was tried to a jury, and the jury found Alexander guilty. The habitual

---

[1] We refer to the transcripts and appellant's appendices from the three appeals according to their cause numbers. In addition, the transcript volumes in each case are not consecutively paginated, in violation of Indiana Appellate Rule 28(A)(2). We thus cite to the individual volumes as the trial transcript or the sentencing transcript.

offender enhancement was tried to the bench, and the judge determined that Alexander was an habitual offender.

## C. Cause No. CR-405

On January 11, 2013, Officer Stephanie Souther was on patrol when she saw a Toyota Camry that had been reported as stolen and as being involved in an armed robbery. She and other officers attempted to stop the Camry, but its driver, later identified as Alexander, refused to stop. Alexander lost control of the car during the subsequent chase and crashed into a house's front porch.

As Souther and other officers approached the car, Alexander crouched down and disappeared from view for a few seconds. Souther believed he was looking for a weapon. Next, he tried to get out of the car, but damage from the crash prevented it. Alexander then tried to put the car into reverse and back up, even though Souther was standing right behind the car. The car was stuck, and officers took Alexander into custody. They searched the Camry and found Nagy's gun between the front passenger seat and the door.

The State charged Alexander with unlawful possession of a firearm by a serious violent felon, a Class B felony; receiving stolen auto parts, a Class C felony; and two counts of resisting law enforcement, one as a Class D felony (fleeing in a vehicle) and one as a Class A misdemeanor (refusing to cooperate at the crash site). Later, the State amended the charging information to add an habitual offender enhancement. Alexander pleaded guilty to all charges except the habitual offender enhancement. The enhancement was tried to the bench, and the court determined that he was an habitual offender.

4

## D. Sentencing

The court held one sentencing hearing for all three cases. In CR-404, the court sentenced Alexander to twenty years, enhanced by thirty years due to the habitual offender charge, for a total of fifty years. In CR-403, the court sentenced Alexander to twenty years, enhanced by thirty years due to the habitual offender charge, for a total of fifty years. In CR-405, the court sentenced Alexander to twenty years for the firearm offense, plus eight years for receiving stolen auto parts, plus three years for one of the resisting law enforcement convictions and one additional year for the other resisting law enforcement conviction, all to be served consecutively for a total of thirty-two years. In addition, the court attached a thirty-year enhancement to the handgun conviction due to the habitual offender charge, for a total sentence of sixty-two years.

The court further directed that the sentences in all three cases would be served consecutively, except that of the three habitual offender enhancements, Alexander would serve only the thirty-year enhancement in CR-405. CR-405 Sentencing Tr. pp. 39-40. Adding the twenty-year sentence in CR-404 to the twenty-year sentence in CR-403 and the sixty-two-year sentence in CR-405 results in an aggregate 102-year sentence.

## ISSUES

Alexander raises the following issues:

I.      Whether the evidence is sufficient to sustain his burglary conviction in CR-404.

II.     Whether the trial court abused its discretion in allowing the State to amend the charging informations to add habitual offender enhancements.

III.    Whether the trial court abused its discretion in sentencing him.

5

IV.    Whether his sentence is inappropriate in light of the nature of the offenses and his character.

## DISCUSSION AND DECISION

### I. SUFFICIENCY OF THE EVIDENCE – BURGLARY (CR-404)

When reviewing a challenge to the sufficiency of the evidence underlying a conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). The evidence and all reasonable inferences drawn from it are viewed in a light most favorable to the verdict. *Id.* We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

To convict Alexander of burglary as a Class B felony, the State was required to prove beyond a reasonable doubt that he (1) knowingly or intentionally (2) broke and entered (3) a dwelling (4) with the intent to commit a felony within. Ind. Code § 35-43-2-1 (1999).

Alexander first argues that the State failed to prove that a breaking and entry occurred because a detective conceded at trial that he had no definitive explanation for how the burglar entered the home. The occurrence of a breaking may be proven entirely by circumstantial evidence and may include opening an unlocked door. *Davis v. State*, 743 N.E.2d 751, 753 (Ind. 2001). Here, the evidence established that the Nagys ensured that all their windows were closed and all doors were locked before leaving. When they returned, the front door was unlocked. In addition, a screen had been removed from the

6

kitchen window and was on the ground outside. They had not given anyone permission to enter their home while they were gone. The jury could reasonably conclude that a person entered the house by opening a closed but unlocked window, thereby establishing the element of breaking.

Next, Alexander claims the State failed to prove that he committed the burglary. The evidence most favorable to the verdict established that the Nagys did not know Alexander and had never given him permission to be inside of their home. After the burglary, his palm print was found inside the home on a glass table and he was later arrested with the Nagys' gun in his possession. This circumstantial evidence is sufficient to establish beyond a reasonable doubt that Alexander committed the burglary. *See Mediate v. State*, 498 N.E.2d 391, 395 (Ind. 1986) (affirming conviction for burglary where defendant's fingerprint was found in a home and defendant had no legitimate right of access to the home).

## II. AMENDMENT OF CHARGING INFORMATION

Alexander argues that the trial court erred in allowing the State to amend the charging information in each of the three cases to add an habitual offender enhancement. The governing statute provides,

> An amendment of an indictment or information to include a habitual offender charge . . . must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial.

7

Ind. Code § 35-34-1-5(e) (2007).[2] We review the trial court's decision to amend a charging information for an abuse of discretion. *See Brown v. State*, 912 N.E.2d 881, 892 (Ind. Ct. App. 2009) (no abuse of discretion in the trial court's grant of leave to amend an information), *trans. denied*.

Before addressing the merits of Alexander's claim, the State contends Alexander waived it by failing to object to the amendment in any of the three cases. A defendant must object to a pre-trial substantive amendment to the charging information, and if the objection is overruled the defendant must request a continuance. *See Wilson v State*, 931 N.E.2d 914, 918 (Ind. Ct. App. 2010), *trans. denied*. Failure to object or to request a continuance results in waiver. *Id.*

In each of the three cases, the State did not seek to amend the charging information to add the habitual offender count until more than ten days after the omnibus date. Alexander did not file written objections to any of the proposed amendments. On April 25, 2013, the court held a combined hearing in all three cases on pending motions, including the State's motions to amend the charging informations. We have not been provided with a transcript of that hearing. Instead, we have the court's minute entries in the three cases. The entries do not indicate that Alexander objected to the State's proposed habitual offender charges. CR-403 Appellant's App. p. 29; CR-404 Appellant's

---

[2] This statute was amended in 2013, effective on July 1, 2013. Regarding a prior amendment to Indiana Code section 35-34-1-5, a panel of this Court concluded that it could be applied retroactively to pending criminal cases without violating the ex post facto clause. *See Ramon v. State*, 888 N.E.2d 244, 251-52 (Ind. Ct. App. 2008). Indiana's appellate courts have not yet concluded whether the 2013 amendment to Indiana Code section 35-34-1-5 can be retroactively applied, and the parties do not address this issue. Our analysis thus considers the version of the statute that was in effect when Alexander committed his crimes.

App. p. 37; CR-405 Appellant's App. p. 46. Alexander merely requested that the trials be continued.

The court next held a hearing in all three cases on May 23, 2013. Again, we do not have a transcript of the hearing and must rely upon the court's docket entries. During the hearing, Alexander waived an initial hearing on the habitual offender enhancements in all three cases and did not object.

Finally, during the three bench trials on the habitual offender enhancements, Alexander argued that he was renewing his prior claim that the amendment to add those charges was untimely. However, the record fails to indicate that he had previously made an objection. We conclude that Alexander waived his right to challenge the timeliness of the habitual offender enhancements.

In any event, despite Alexander's waiver we conclude that the amendment of the charging informations, although substantive, did not deprive him of a reasonable opportunity to defend himself against the habitual offender allegations. The purpose of Indiana Code section 35-34-1-5(e) is to allow a defendant sufficient time to prepare a defense to the habitual offender charge. *Haymaker v. State*, 667 N.E.2d 1113, 1114 (Ind. 1996). In each of the three cases, Alexander received a continuance of the trial date when the State sought to amend the charging informations. In addition, he was not tried on any of the habitual offender allegations until August 2013—almost four months after the State requested leave to amend the informations. He thus had ample time to prepare his defense, and the court did not abuse its discretion in permitting the amendments to the charging informations.

9

### III. SENTENCING – ABUSE OF DISCRETION

Subject to the review and revise authority discussed below, sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012). A court may abuse its discretion by: (1) failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing the sentence but the record does not support the reasons, (3) omitting from the sentencing statement reasons that are clearly supported by the record and advanced for consideration, or (4) giving reasons in the sentencing statement that are improper as a matter of law. *Id.*

During the sentencing hearing, the trial court identified the following mitigating circumstances for all three cases: (1) Alexander pleaded guilty in CR-405 (except as to the habitual offender charge), (2) Alexander's history of substance abuse, and (3) Alexander's expression of remorse. The court declined to find Alexander's employment history as a mitigating factor, stating, "You're a strapping young man capable of employment and you should be employed." CR-405 Sentencing Tr. p. 35.

Alexander argues that the court should have given greater weight to the three mitigating factors. A sentencing court is not obligated to give proffered mitigating factors the same weight the defendant does. *Wilkes v. State*, 917 N.E.2d 675, 690 (Ind. 2009). Alexander further argues that the court should have found his employment history to be a mitigating factor. The court need not accept a defendant's argument as to what constitutes a mitigating circumstance. *Id.* The record shows that the court considered the

10

proposed mitigating factor, rejected it, and provided a reasonable explanation for the rejection. We find no abuse of discretion.

## IV. SENTENCING - INAPPROPRIATENESS

Article 7, section 4 of the Indiana Constitution grants Indiana's appellate courts the power to review and revise sentences. *Coleman v. State*, 946 N.E.2d 1160, 1170 (Ind. 2011). We may revise an otherwise lawful sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We may consider the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Teague v. State*, 978 N.E.2d 1183, 1189 (Ind. Ct. App. 2012). The defendant bears the burden of persuading the appellate court that his or her sentence meets the inappropriateness standard. *Coleman*, 946 N.E.2d at 1170.

We review the sentences Alexander received and then consider the nature of the offenses and the character of the offender.

### A. CR-404

A person who commits a Class B felony may receive a minimum sentence of six years or up to a maximum sentence of twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5 (2005). Alexander received the maximum sentence of twenty years for his B felony burglary conviction, plus a habitual offender enhancement of thirty years. The court noted that he would not serve the habitual offender enhancement because only the enhancement in CR-405 would be given effect.

11

## B. CR-403

Alexander received the maximum sentence of twenty years for his B felony robbery conviction, plus a habitual offender enhancement of thirty years. However, the court noted that he would not serve the habitual offender enhancement because only the enhancement in CR-405 would be given effect.

## C. CR-405

Alexander received the maximum sentence of twenty years for B felony unlawful possession of a firearm by a serious violent felon. In addition, at the time Alexander committed the offense of Class C felony receiving stolen auto parts, the minimum sentence was two years, the maximum sentence was eight years, and the advisory sentence was four years. Ind. Code § 35-50-2-6 (2005). The court imposed the maximum sentence of eight years.

Next, the sentence for a Class D felony at the time Alexander committed his offenses ranged from a minimum of six months to a maximum of three years, with an advisory sentence of one and a half years. Ind. Code § 35-50-2-7 (2012). Alexander received the maximum sentence of three years for D felony resisting law enforcement.

Alexander received the maximum sentence of one year for his conviction of Class A misdemeanor resisting law enforcement. Ind. Code § 35-50-3-2 (1977). The court ordered all of the sentences to be served consecutively, plus a thirty-year habitual offender enhancement, for a total sentence of sixty-two years.

In addition, the court ordered all convictions served consecutively except that Alexander would serve only the habitual offender enhancement in CR-405, for an aggregate sentence of 102 years, which was the maximum allowed by statute.

Turning to the nature of the offenses, Alexander's burglary of the Nagys' residence in CR-404 was unremarkable except that the volume of items stolen indicates that it took time for Alexander to complete the crime. Thus, he had ample opportunity to reconsider and abandon his criminal course of conduct but chose to continue.

In CR-403, Alexander ambushed and robbed at gunpoint a fifty-nine-year-old woman under cover of darkness. Alexander followed Boehme from a gas station to her place of work and approached her after waiting for her to get out of her car, again demonstrating that Alexander had ample time to abandon his course of action but persisted in his criminal conduct.

Finally, in CR-405 Alexander endangered the lives of multiple officers and other motorists by fleeing from the police in a stolen car. The chase ended only when Alexander crashed into a house, potentially endangering its occupants. Even then, Alexander refused to comply with the law, attempting to get out of the vehicle to flee and then, when that failed, trying to back up his car even though he risked running over a police officer.

Next, we consider the character of the offender. Alexander committed all of these offenses within a two-week period, a crime spree that says much about his character. In addition, he was on parole when he committed the current offenses. His criminal history is extensive. He was thirty-four years old at sentencing and had four juvenile

adjudications, sixteen prior misdemeanor convictions, and seven prior felony convictions. Alexander's prior convictions include receiving stolen property, battery, robbery, several counts of resisting law enforcement, and several counts of criminal trespass. Thus, he continues to commit the same offenses time and time again despite opportunities to reform. Furthermore, he has not managed to avoid criminal charges for any length of time. In addition, lesser sanctions have not changed Alexander's behavior. He has violated probation and parole in multiple cases. These factors indicate that a downward reduction of his sentence is not merited.

Alexander asserts that the maximum sentence is inappropriate because he is not the worst possible offender. When deciding whether a case is among the very worst offenses and a defendant among the very worst offenders, thus justifying the maximum sentence, we concentrate less on comparing the facts of the case to others and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character. *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*. Alexander's lengthy and sustained history of violent criminal behavior, taken together with the crime spree at issue here, demonstrate an absolute unwillingness to lead a law-abiding life, regardless of who may be endangered by his misconduct. He has failed to persuade us that his sentence is inappropriate.

Although we affirm Alexander's sentence, the trial court's sentencing orders require clarification. During the sentencing hearing, the court clearly ordered the sentences in all three cases to be served consecutively except for the habitual offender

14

enhancements, of which Alexander would serve only the enhancement in CR-405. The court's decision as to the enhancements follows our supreme court's precedent. *See Breaston v. State*, 907 N.E.2d 992, 994 (Ind. 2009) ("Under Indiana law, a trial court cannot order consecutive habitual offender sentences."). However, the judgment of conviction in CR-405 does not indicate whether the sentence is to be served concurrently or consecutively with the sentences in CR-403 and CR-404. Similarly, the judgments of conviction in CR-403 and CR-404 refer to the sentence in CR-405 but do not mention each other and whether the sentences in CR-403 and CR-404 are to be served concurrently or consecutively. We remand to the trial court to clarify the sentencing orders to resolve these omissions.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court and remand for further proceedings.

Affirmed and remanded.

BAKER, J., and BARNES, J., concur.