## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 09 2018, 10:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lindani A. Mzembe,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 9, 2018

Court of Appeals Case No.
18A-CR-1035

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford,
Judge

Trial Court Cause No.
71D03-1409-F1-6

**Tavitas, Judge.**

## Case Summary

[1] Lindani Mzembe appeals his conviction for burglary, a Level 2 felony. We affirm.

## Issue

[2] Mzembe raises a single issue in his brief, which we restate as whether the evidence of the "breaking" requirement was sufficient to support Mzembe's burglary conviction.

## Facts

[3] Before leaving for work, James Munoz ("James") took out the trash from his house to the back alley behind his house. When James was in the alley, he was approached by two men. One of those men had a gun. The men asked James for money and told him to get on the ground. James only had five or six dollars in his wallet, so the men asked James what he had in the house. James, instead, offered his phone and wallet, hoping the men would not want to go inside his home where his pregnant wife and daughter were located. Apparently unsatisfied with that offer, the men forced James into the house.

[4] The men walked James through the house to see what valuable items the men could steal. The men eventually made their way upstairs, where James' wife, Jennifer Munoz ("Jennifer"), and James' daughter were sleeping. The men continued to grow increasingly frustrated because James did not have anything

the men perceived to be valuable to steal. James offered the men his computer, hoping the men would take it and leave the home.

[5] During the process of rummaging through James' and Jennifer's home, the men gathered the family in the living room and ordered the family to kneel and face the couch. During this time, the men focused the gun on Jennifer. When James saw an opportunity, he reached for the gun and told Jennifer to run. James struggled for the gun and, at one point, was fighting both men for control of the weapon. Suddenly, James noticed that he had blood on his face and in his eyes from being hit with the gun in the struggle. After fighting with James for some time, the men ran away, and James immediately tended to his crying daughter.

[6] Jennifer was able to escape and ran to the home of Brenda Hutchins to call the police. Shortly after, Officers Nathan Wojtysiak and Scott Robinson of the Mishawaka Police Department, arrived at the Munoz home. The officers could see that someone was still in the house, so they approached the house from both the front and back. Officer Robinson observed a man with a gun and ordered him to stop. The individual with the gun then started running. The officers were joined by Corporal Matthew Porter, and they all chased the suspect. Ultimately, the officers were able to catch and arrest Tremayne Grundy. Grundy identified Mzembe as the other man who committed the robbery with him. Mzembe was able to leave the house without being immediately caught by police. Missing from the Munoz home were James'

computer, wallet, and phone, and Jennifer's phone and keys. James was transported to the hospital for treatment of his injuries from the incident.

[7] Later that day, Susan Freeman, another neighbor of James and Jennifer, found her side gate ajar, a black hooded sweatshirt hanging on her gate, and a set of keys in her yard. Freeman called the police to collect the items based on her knowledge of the incident at the Munoz house earlier that day. The DNA found on the sweatshirt in Freeman's yard was consistent with DNA taken from both James and Mzembe.

[8] The next day, James identified Mzembe in a photo lineup shown to him by the police as one of the two men that participated in the armed robbery of his home. Police discovered the gun found in Grundy's possession was registered to an individual named Dirtrice Harris, who is Mzembe's former girlfriend, and the mother of Mzembe's child.

[9] The State ultimately charged Mzembe with robbery with a deadly weapon, a Level 3 felony; burglary, a Level 2 felony; and robbery resulting in bodily injury, a Level 3 felony. A jury found Mzembe guilty of all three charges. Mzembe was sentenced to sixteen years in the Department of Correction for the robbery with a deadly weapon conviction; thirty years for the burglary conviction; and sixteen years for the robbery resulting in bodily injury conviction. The court ordered Mzembe's sentences to run consecutively to each other, for an aggregate sentence of sixty-two years.

Analysis

Mzembe challenges the sufficiency of the evidence related to his burglary conviction.[1] When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985)). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

Mzembe specifically argues that the State did not prove there was a "breaking," and, therefore, the evidence was insufficient as to his burglary conviction. The State charged Mzembe with burglary, a Level 2 felony. "A person who breaks

---

[1] Mzembe raises only one issue focused on the "evidence to convict of Burglary," Appellant's Br. p. 4. Mzembe has not challenged any of his other convictions and, therefore, we focus our analysis only on the burglary conviction and, specifically, on the "breaking" element.

and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony." Ind. Code § 35-43-2-1. The offense is a Level 2 felony if it is committed while armed with a deadly weapon or results in serious bodily injury to any person other than a defendant. Ind. Code § 35-42-2-1(3). The State was required to prove that there was a "breaking" to adequately prove all the elements of burglary.

[12] "The element of breaking is satisfied by showing that even the slightest force was used to gain unauthorized entry." *Davis v. State,* 743 N.E.2d 751, 753 (Ind. 2001) (citing *Trice v. State,* 490 N.E.2d 757, 758-59 (Ind. 1986)). "Opening an unlocked door or pushing a door that is slightly ajar constitutes a breaking." *Davis,* 743 N.E.2d at 753 (citing *Utley v. State,* 589 N.E.2d 232, 241 (Ind. 1992)); *see also Anderson v. State,* 37 N.E.3d 972, 972 (Ind. Ct. App. 2015) (holding that "rushing someone to gain unauthorized entry is sufficient evidence of force used" to prove a breaking). "The occurrence of a breaking may be proven entirely by circumstantial evidence." *Id.* (citing *McCovens v. State,* 529 N.E.2d 26 (Ind. 1989)). Finally, "[t]he element of 'breaking' can also be accomplished by forcing a person to open the door to a residence." *Jenkins v. State,* 34 N.E.3d 258, 262 (Ind. Ct. App. 2015) (citing *Dew v. State,* 439 N.E.2d 624, 625 (Ind. 1982)), *trans. denied.*

[13] Mzembe argues that there was no direct evidence of a breaking and that the circumstantial evidence is "wholly inconclusive." Appellant's Br. p. 6. Therefore, Mzembe argues, the State did not prove all the elements of burglary and, accordingly, the evidence was insufficient to convict Mzembe of burglary.

This court has denied that conclusive evidence is required to prove a breaking. *See Jenkins,* 34 N.E.3d at 262 (noting that our supreme court "has also held the use of physical force against a victim to gain entry into a residence was sufficient to prove the element of breaking independent of conclusive evidence force was used to open the residence's door") (citations omitted).

[14] Our supreme court addressed a similar breaking issue in *Dew v. State.* In *Dew,* Dew was involved in a motor vehicle accident with a mother and her daughter. 439 N.E.2d at 624. After the mother, daughter, and Dew exited their vehicles to inspect the damage from the collision, Dew drew a gun and forced the mother to empty her purse. *Id.* Dew then drove the mother and daughter to their home, forced the mother to open the door with her keys, and took the car, television, stereo, and other items. *Id.* Dew argued there was insufficient evidence of a breaking because the "victim opened the door to her home with her keys" while Dew had a gun pointed at the victim. *Id.* Our supreme court concluded "'by forcing the victim at gunpoint to unlock the door and let him into the house, appellant was as guilty of breaking as if he had taken the keys from her hand and unlocked the door himself.'" *Id.* at 624-25 (quoting *Moore v. State,* 369 N.E.2d 628 (Ind. 1977)). The *Dew* court held that "when access is accomplished by threatening the victim with force to unlock the door and allow entry, a breaking as an essential element of burglary, has occurred." *Id.* at 625.

[15] James testified that the men "forced" him into the house after displaying a gun. Tr. Vol. II p. 69. James stated that he was nervous to resist the suspects' request to enter because the men had a gun. James also testified that he did not

want to tell the men the door "wasn't locked." *Id.* This statement could lead the jury to the reasonable conclusion that the door was closed but unlocked. As discussed above, opening an unlocked door meets the requirements of the breaking element. *See Davis,* 743 N.E.2d at 753. While Mzembe offers several possible theories about the condition of the door, including possible theories about how it is likely the door remained open while James took out the trash, we will not reweigh the evidence. *See McCallister,* 91 N.E.3d at 558.

Furthermore, it is irrelevant to our analysis if the jury believed that James, and not Mzembe, opened the door to the house. James testified that the men had a gun and that he did not resist because he feared the use of the gun. Therefore, the jury could reasonably conclude that Mzembe forced James to open the door to let him into James' home. As in *Dew,* by pointing a gun at James and instructing James to open the door to his own home, Mzembe employed sufficient force to meet the breaking requirement for burglary. Therefore, we cannot say the evidence was insufficient to convict Mzembe of burglary.

## Conclusion

There is sufficient evidence of a "breaking" to support Mzembe's conviction for burglary. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.